

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable ..  .. Coons
County Attorney
Sherman County
Stratford, Texas

Dear Sir:                    Opinion No. O-6566

Re: May a railroad company be
compelled by mandatory in-
junction to install neces-
sary drainage structure
under its right of way to
provide drainage for a
state highway?  And other
related questions.

We are in receipt of your letter of recent date
requesting the opinion of this department on the above
stated matters.  We appreciate your excellent discussion
of the points involved in this inquiry.  We quote from
your letter as follows:

"About a year ago the State Highway Depart-
ment requested the Commissioners' Court of
Sherman County to secure by purchase or con-
demnation, for the purpose of widening and im-
proving U. S. Highway No. 54 from Stevens to
Texhoma in Sherman County, an additional 106
feet of right-of-way adjoining to the south-
east the present highway, under the provisions
of Art. 6674n, Vernon's Ann. Civ. St.  The
right-of-way requested has been duly secured
and paid for.

"However, when the pavement is laid it is
necessary that it be drained; and the engineers
of the State Highway Department have determined

Honorable E. K. Coons,    page 2

that at a point near the northeast terminus of
the highway (in Texas) the most practical drain-
age for a portion of the highway would be through
the right-of-way of the Chicago, Rock Island and
Gulf Railway, which adjoins and parallels the
highway on the north.  An alternative would be
to construct a drainage channel along the sides
of the new highway some distance to the northeast
across the Texas-Oklahoma boundary line into Okla-
homa and in the town of Texhoma, Oklahoma.

"The alternative channel would probably flood
the town of Texhoma, Oklahoma, and be disastrous
to businesses therein situated.

"The Railway Company has been requested by
the State Highway Department to install the neces-
sary drainage structures through its right-of-way
and under its track at the point indicated, which
would be a natural drainage channel were it not for
the railroad embankment; but the Railway Company has
refused to do so.

"The railroad was constructed about the year
1901, and there has never been a culvert under the
track at the point indicated.  And, as stated, were
it not for the railroad embankment, the water would
naturally drain along the ground at the point where
the drainage structure was requested.

"It is the opinion of the writer that, as the
Railway Company did not install culverts at this
place when the railroad was constructed, as required
by Art. 6328, Revised Statutes, they may be compelled
to do so now by mandatory injunction or mandamus; but
am undecided as to the proper party to institute such
a proceeding.  It is probable that the Commissioners'
Court, under the provisions of Art. 6674n, would have
the authority to do so; and it is also probable that
the State, through the Attorney General might do so.

"It is also the opinion of the writer that a
drainage channel may be condemned by the Commissioners'
Court under the provisions of Art. 6674n, V. A. C. S.,
subject to the use by the railroad.  In the latter

Honorable L. B. Coons, page 3

event, proper compensation would have to be made
to the railroad for any resultant damage, which
might include the cost of the culvert and other
drainage structures. The fact that the drainage
channel to be condemned is already occupied for
a public purpose (for a railroad) would make no
difference because the prior public use would not
be interrupted nor destroyed. See 20 C. J. 665,
Sec. 91, and the authorities there cited.

"The questions upon which your opinion is
asked are as follows:

"1. May the Chicago, Rock Island and Gulf
Railway Company be compelled by mandatory injunc-
tion or mandamus to install the necessary drainage
structures on their right-of-way and under their
tracks to drain the highway at the point requested?

"2. If the answer to the above question is in
the affirmative, who is the proper party to insti-
tute the proceedings?

"3. Is the Commissioners' Court of Sherman
County authorized to condemn, in a proper proceeding
under Art. 6674n, V. A. C. S., a drainage channel
through the railroad right-of-way, and under the
tracks?"

Article 6328, Vernon's Annotated Civil Statutes, pro-
vides:

"In no case shall any railroad company con-
struct a roadbed without first constructing the
necessary culverts or sluices as the natural lay
of the land requires, for the necessary draining
thereof."

Generally speaking, a railroad company may be held liable
in damages by reason of the fact that the road has been so con-
structed as to interfere with the drainage or flow of water.
35 Tex. Jur. pp. 184-185. In the case of Penoe v. Galveston
& S. A. Ry. Co., (Civ. App.) 190 S. W. 538, the court said:

Honorable K. K. Coons, page 4

". . . It has long been the law that, if a
railway company fails to construct the proper
culverts or sluices, necessary to pass off the
surface waters falling on higher grounds, in the
direction the water would have flowed but for said
embankment or obstruction, it is responsible for
the damage incurred by such failure. . . ."
(underscoring ours)

In the case of Timpson & H. Ry. Co. v. Smith, (Civ. App.)
165 S. W. 86, the court held that when the cause of action and
the judgment rendered were based upon facts showing, that in
the construction of its roadbed, a railroad company had inter-
fered with and diverted the natural flow of water across land,
and that, as a result, the land was flooded, washed and damaged
by each recurring overflow, an order of the court issuing a
mandatory injunction, requiring the railroad company to con-
struct its roadbed and openings and sluiceways in such manner
as the natural lay of the land required, was in accordance with
statutory requirements.

In the case of Gulf C. & S. F. R. Co. v. Harbison (Civ.
App.) 88 S. W. 452, 454, affirmed, 99 Tex. 536, 90 S. W. 1097,
the court said:

"The statute imposes upon a railway company the
duty of first constructing the necessary culverts or
sluices as the natural lay of the land requires for
the necessary drainage thereof, before it has the
right to construct its roadbed, or rather, complete
the construction of its roadbed. This being true,
if it fails to construct sufficient culverts and
sluices for the necessary drainage of the land over
which its roadbed is being constructed as the natural
lay of the land requires, and damage to the property
of others results from such failure, an injunction
will lie to compel such railroad company to construct
the necessary culverts or sluices, and in the event
the railroad company has constructed a dam across
the channel of a stream over which its road passes,
and such dam creates a nuisance by diverting the
water from its natural channel and causing it to
overflow and injure the lands of adjacent proprietors,
an injunction will lie in favor of such proprietors
against the railway company to compel the removal
of such dam."

Honorable E. K. Coons, page 5

        In view of the foregoing authorities, it is our opinion that in case of damage to the highway or other property, by reason of the railroad company's failure to construct and maintain proper culverts and sluiceways in conformity to the requirements of the natural lay of the land, the railroad company would be liable for such damages. With reference to compelling a railroad company by injunction to construct the necessary culverts or sluices in accordance with the requirements of the natural lay of the land, we note that in each of the above cited cases, a cause of action existed for damages, and in the same case, the court granted a mandatory injunction to compel the railroad company to construct the proper drainage structures; consequently, the damage to the owner of the property involved had already actually accrued prior to the court's granting of the injunction.

        In view of the circumstances stated by you, and prior to the time of the actual accrual of damages to the highway, by reason of the railroad company's failure with respect to constructing proper drainage structures, and in view of the existence of a legal remedy (condemnation), whereby proper drainage for the state highway may be obtained, it is our opinion that a mandatory injunction would not lie to compel the railroad company to construct the desired drainage structures.

        It is our further opinion that an easement could be condemned for the purpose of constructing a drainage through the railroad right-of-way. The fact that the property to be condemned is already occupied for a public purpose would not prevent the condemnation for a drainage channel under the railway for the necessary purpose of properly draining a state highway. In the case of Missouri K. T. Ry. Co. vs. Rockwall Co. Levee Imp. Dist. No. 3, 297 S. W. 206 (Tex. Sup. Ct.) the court held that property owned by or devoted to the use of a railroad is subject to appropriation for another public use when the condemnation is reasonably necessary to the purpose of the public use and not inconsistent with the use of the right-of-way for railroad purposes nor detrimental to the public. Particularly is this true where the right of eminent domain is exercised by the sovereign itself and will not materially impair or interfere with the use of the right-of-way for railroad purposes. (29 C. J. S., Sections 75-80, pp. 865-875)

        Art. 6674n, V. A. C. S., in part provides:

Honorable E. L. Coons, page 6

"Whenever, in the judgment of the State Highway
Commission, the use or acquisition of any land for
road, right of way purposes, timber, earth, stone,
gravel or other material, necessary or convenient
to any road to be constructed, reconstructed, main-
tained, widened, straightened or lengthened, or
land not exceeding one hundred (100) feet in width
for stream bed diversion in connection with the
locating, relocating or construction of a designated
State Highway by the State Highway Commission, the
same may be acquired by purchase or condemnation by
the County Commissioners Court. Provided that the
County in which the State Highway is located may pay
for same out of the County Road and Bridge Fund, or
any available county funds.

"Any Commissioners' Court is hereby authorized to
secure by purchase or by condemnation on behalf of the
State of Texas, any new or wider right of way or land
not exceeding one hundred (100) feet in width or stream
bed diversion in connection with the locating, reloca-
ting or construction of a designated State Highway, or
land or lands for material or borrow pits, to be used
in the construction, reconstruction, or maintenance of
State Highways and to pay for the same out of the
County Road and Bridge Fund, or out of any special
road funds or any available county funds. The State
Highway Commission shall be charged with the duty of
furnishing to the County Commissioners' Court the
plats or field notes of such right of way or land
and the description of such materials as may be
required, after which the Commissioners' Court may,
and is hereby authorized to purchase or condemn the
same, with title to the State of Texas, in accordance
with such field notes. Provided that in the event
of condemnation by the County the procedure shall be
the same as that set out in Title 52, Articles 3264
to 3271, inclusive, Revised Civil Statutes of Texas,
of 1925. . . ."

It is our opinion that the Commissioners' Court of
Sherman County, at the request of the State Highway Commis-
sion, would be authorized to secure by purchase or condemna-
tion an easement for the purpose of constructing the necessary

Honorable A. S. Coons,  page 7

drainage for the state highway under the railroad right-of-way in a proper proceeding under the provisions of Article 6674n.

We trust that the foregoing fully answers your inquiries.

APPROVED MAY 23 1945

ATTORNEY GENERAL OF TEXAS

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

J. A. Ellis
Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN